UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| EXCO OPERATING COMPANY, LP | § | CIVIL ACTION NO. 10:01838 |
| | § | |
| VERSUS | § | JUDGE DONALD E. WALTER |
| | § | |
| EVELYN ARNOLD, *ET AL.* | § | MAG. JUDGE KAREN L. HAYES |

SPECIAL MASTER'S REPORT AND RECOMMENDATION

This matter is an interpleader action filed by Exco Operating Company, LP ("Exco").

Exco acquired certain mineral interests in the Vernon Field in Jackson Parish, Louisiana from the

prior operator, Anadarko Petroleum Corporation ("Anadarko").   The unit at issue in this

proceeding is LCV RA SURR created by the Louisiana Office of Conservation.  The actual

property at issue within the unit is the SW¼ of the NE¼ of Section 30, Township 16 North,

Range 2 West, Jackson Parish, Louisiana ("The Property").

The unit has a number of producing wells; and, subsequent to its acquisition of the unit

from Anadarko effective November 1, 2006, Exco had been paying proceeds of production

(royalties and unleased mineral interests) to the defendants in this proceeding.

The essential issue in the matter is the identity of the heirs of Ned and Nannie Turner.

The records of Jackson Parish, Louisiana contain a Judgment of Possession dated October 18,

1932 in the matter styled "Succession of Ned and Nannie Turner" and recorded in Conveyance

Book 45, Page 99, Registry No. 36605, Jackson Parish, Louisiana. The proceedings indicate that

Ned Turner died on March 28, 1909 and that Nannie Turner died on September 24, 1932.  The

heirs placed in possession in that Judgment of Possession were Henry Turner, Mingo Turner,

Elizabeth McLain, Bertha Reynolds, Minnie Osborne, and Anna N. Dedmon, recognized as

children and heirs of Ned and Nannie Turner and further recognized Wilson Turner as a child and heir of Ned Turner, but not of Nannie Turner.  The heirs recognized in the Judgment of Possession and their successors and assigns will hereinafter be referred to as "Judgment Heirs" for purposes of brevity.

However, when landmen initially contracted by Anadarko began trying to determine the descendants of the heirs recognized in the Judgment of Possession who had died, the names of additional heirs of Ned and Nannie Turner surfaced.  The Affidavits obtained by the landmen working the prospect and seeking oil and gas leases identified the Judgment Heirs (sometimes with a slightly different spelling of their names) but also additionally identified Jane Turner Pierce, Mattie Turner Henderson and Willie Turner in addition to the Judgment Heirs.  For purposes of brevity, the successors and assigns of Jane Turner Pierce, Mattie Turner Henderson and Willie Turner will be referred to as "Other Heirs".

Attorneys retained by Anadarko to examine title to The Property issued title opinions to Anadarko.  Those title opinions were presented *in camera* to me and have been received under seal (Document No. 159) in order to maintain Exco's assertion of attorney-client privilege. Those opinions have been of great assistance to me; and, reserving all other rights of confidentiality, I note that the title examiners, who were aware of the Judgment of Possession, gave effect to the Affidavits that were received in the record in this proceeding and recognized the successors and assigns of both the Judgment Heirs and Other Heirs as entitled to the proceeds of production attributable to The Property.

Lloyd Turner, a descendant of one of the Judgment Heirs, made demand on Exco claiming that the proceeds of production were being improperly paid and sought an accounting. In response, and because the interest of an apparent descendant of one of the Judgment Heirs,

2

Pearl Dedmon Wiley Baldwin, deceased, was in suspense, Exco provoked this interpleader action and served all known parties at interest.

Various defendants to the interpleader action have filed answers, some of whom are represented by counsel and some of whom are not. The interests of both descendants of the Judgment Heirs and the Other Heirs are each represented by counsel, and those individuals who did not appear or answer or who appeared in proper person who have aligned interests have been effectively represented through the briefing, evidence, and argument of opposing counsel.

In addition to answering the interpleader action, Lloyd Turner filed a reconventional demand for an accounting from Exco, which sought payment of sums he alleges were improperly paid to successors and assigns of the Other Heirs. This accounting claim would be valid if only the Judgment Heirs or their successors and assigns are entitled to receive payment from production, but becomes moot if the Other Heirs are also entitled to payment.

Fortunately, there is no dispute regarding the identity of the successors and assigns of various Judgment Heirs and Other Heirs. The matter must be resolved largely on a legal decision of an issue raised by the Motion for Partial Summary Judgment filed by Lloyd Turner (Document No. 184) and on questions of admissibility of evidence and sufficiency of proof, also raised by Lloyd Turner at the hearing.

I held an informal meeting and teleconference seeking to identify issues and consider alternative methods of procedure. At that meeting it was decided that each of the attending parties would submit documentary evidence so that I could see if it were possible to decide the matter based upon those submissions. After considering the submissions of the various parties, I determined that a hearing would be necessary. All of the submissions and additional

documentary evidence were filed in a hearing held in this proceeding on January 11, 2013 except for the title opinions, which I am now filing under seal.

As Special Master I am cognizant of the limitations on my report.  Based upon the Order making the appointment and the applicable provisions of Rule 53 of the Federal Rules of Civil Procedure, I am authorized to decide issues of fact, but issues of law are a matter for the Court. Nevertheless, because the principal issue in this case involves an issue of law, I am going to make a recommendation to the Court on a decision of law, which is critical to answering the ultimate question.

The Motion for Partial Summary Judgment filed by Lloyd Turner raises the principal legal issue.  The Memorandum in Support of that Motion for Partial Summary Judgment has a section appropriately entitled "Into the Legal Quagmire." Oppositions to that Motion for Partial Summary Judgment were filed by some parties, particularly the heirs of Willie Turner (Document No. 162).  Rather than return the matter directly to the District Court for decision on this legal issue, I referred the Motion for Partial Summary Judgment and the legal issue to the merits for hearing.

The essence of Lloyd Turner's argument is that Louisiana Civil Code Article 3502 provides that any claims on behalf of the Other Heirs or their successors and assigns are simply too late.  Article 3502 provides that:

> "An action for the recognition of a right of inheritance and recovery of the whole or a part of a succession is subject to a liberative prescription of thirty years. This prescription commences to run from the date of the opening of the succession."

Although that argument has the virtue of simplicity, it does not appear to be the current state of Louisiana law.  As noted by the Memorandum in Opposition to Motion for Partial Summary Judgment, liberative prescription bars personal actions, but does not bar real actions

that protect the rights of ownership. *Songbyrd, Inc. v. Bearsville Records, Inc.*, 104 F.3d 773, 778 (5th Cir. 2/4/97).  As also noted in the Opposition brief, Comment (c) of Civil Code Article 3502 notes that "(c) According to well-settled Louisiana legislation, jurisprudence, and doctrine, a petitory action for the recovery of immovable property is imprescriptible."  The inclusion of that comment is incompatible with the interpretation of Civil Code Article 3502 asserted by the Motion for Partial Summary Judgment.  Article 934 provides that "Succession occurs at the death of a person."  Pursuant to Louisiana Civil Code Article 935 at the moment of Ned and Nannie's death, their children were seized with their ownership interest.  At the respective moment of the parents' deaths, the surviving heirs became co-owners.  A legal heir is presumed to have accepted the succession pursuant to Louisiana Civil Code Article 962; and, pursuant to Louisiana Civil Code Article 963, renunciation must be express and in writing.  None of the Other Heirs renounced the succession.  As held by the Louisiana Supreme Court in *Generis v. Bowie Lumber Co.*, 79 So. 413, 417-18 (La. 1918), the prescription provided in former Civil Code Article 3548, which was restated in Civil Code Article 3502, was simply an affirmation of 30-year acquisitive prescription.

From the case law, a judgment of possession is only *prima facie* evidence of the right of an heir to take possession of an estate. *Quiett v. Moore*, 378 So.2d 362, 377 (La. 1979).

Lloyd Turner also asserts that Judgment Heirs and their successors and assigns acquired the ownership of The Property against the claims of the Other Heirs through acquisitive prescription.  As noted in *Fleniken v. Allbritton*, 566 So.2d 1106 (La. App. 2nd Cir. 1990), it is settled law that prescription under Article 3502 does not run against co-heirs or co-owners, citing *Lee v. Jones*, 224 La. 231, 69 So.2d 26 (1953) and *Headrick v. Lee,* 471 So.2d 904 (La. App. 2d Cir. 1985).  The exception asserted by Lloyd Turner is that, commencing with a sufficiently-

announced hostile act, acquisitive prescription can begin against a co-heir; and it is his position that the recorded Judgment of Possession is such a hostile act. However, there is no evidence of any actual knowledge of the fact of that Judgment of Possession by any of the Other Heirs or their successors or assigns prior to commencement of this litigation and mere constructive notice of a judgment of possession is not sufficient to begin a running of prescription against a co-owner. *Dupuis v. Broadhurst*, 213 So.2d 528, 532 (La. App. 3rd Cir. 1968). The burden of proving acquisitive prescription is on the party seeking ownership by prescription. *Phillips v. Fisher*, 634 So.2d 1305 (La. App 3rd Cir. 1994).

It is my recommendation that this Court hold that the Motion for Partial Summary Judgment filed by Lloyd Turner be denied and that there is no barrier of liberative prescription which precludes the Other Heirs or their successors and assigns from having their claims to The Property recognized. Further, as to any claim of acquisitive prescription, it is my recommendation that the Court hold that the Judgment of Possession in the Succession of Ned and Nannie Turner is neither an act translative of title nor a sufficient hostile act to commence running of acquisitive prescription. At the hearing held in this matter, some evidence of possession of property was offered, but it is my factual conclusion that the evidence is insufficient to establish possession sufficient for acquisitive prescription of 30 years against a co-owner.

At the hearing held in this matter, counsel for Lloyd Turner raised objections to much of the evidence submitted. Although for completeness of the record, all evidence was in fact admitted, I considered objections in weighing the evidence. For instance, an internet website report dealing with ancestry was offered and admitted, but I consider the hearsay objection to that offering to be valid and have given it no weight in reaching my factual conclusions.

The principal objection is hearsay. Exco filed various affidavits which had been obtained by landmen previously contracted by Anadarko and on which the title examiners retained by Anadarko relied in coming to their conclusions regarding ownership. Others filed additional affidavits. As Special Master, with many years experience in examining mineral titles, I must first note that it is quite common when examining title to property to rely on affidavits as to matters not typically revealed by the public record such as marital status, possession, death, or heirship. The affidavits were taken on a standard form which does not go into much detail regarding the extent and manner in which the affiant had knowledge of Ned and Nannie Turner, their death and heirship. However, I note that judgments of possession are routinely signed by judges throughout this State on affidavits given by persons who merely state the same conclusory allegation that they were well acquainted with the decedent. There should not be a higher standard regarding the preliminary matter of how the affiant gained knowledge of the facts added to the form than used in succession proceedings when obtaining affidavits to identify the parties from whom to take leases or for a title examiner to rely upon to render an opinion or a Special Master to base findings of fact upon. Therefore, I have concluded that the affidavits were sufficient and were admissible under an exception to the hearsay rule, Rule 803(19) Reputation Concerning Personal or Family History. This is particularly true when one considers that none of us actually have recollection of the circumstances of our birth and rely solely upon hearsay and family reputation to establish those circumstances. I note that although there were objections to admissibility there is no evidence contradicting the factual assertions of the affidavits. Further, since those affidavits are customarily relied upon by title examiners and have been maintained in the records, first by Anadarko and then Exco, relied upon by title examiners in the routine conduct of the business of oil and gas leasing, exploration and production, and are

similar to those I have seen as a title examiner for other clients, they should also be admitted under Rule 803(6) as a business record.  I recommend that the Court confirm my evidentiary conclusions.

Two census reports were also offered in evidence, a 1910 Census of the Turner household showing Nannie as Head of Household and a Jane Turner as "daughter" and Willie Turner as "son".  An even older census, the June 1880 Census listed the Head of Household as Ned Turner, his occupation as farmer, Wilson as "son", Jane as "daughter", Mattie as "son", and "Annie" as "wife".  I conclude that Annie and Nannie are actually the same individual.  The 1880 Census was obtained during the course of a deposition of Mrs. Giles, who was quite elderly, but who had a reasonably good recollection and kept a copy of the 1880 Census.  Most of what she knew, she learned from her grandfather, Wilson Turner.  Her grandfather had also told her of his sister, Jane, and Jane Turner is apparently the same individual as Jane Turner Pierce, one of the Other Heirs.  The census data is consistent with the affidavits obtained by the landmen.

A minor issue is that several attorneys, formerly members of the law firm of Theus, Grisham, Davis & Leigh, had received an assignment of certain mineral or royalty interests from a number of heirs as a fee for apparently unrelated litigation.  As it developed, many of those attorneys declined to participate in the hearing.  One of the attorneys, Mr. Paul Spillers, representing a number of Judgment Heirs and Other Heirs, appeared and advised me that the descendants of Judgment Heirs they represent did not object to recognition of the descendants of the Other Heirs, and filed a stipulation to that effect.  As correctly noted in objection by counsel for Lloyd Turner that stipulation could only be binding upon the successors and assigns of the Judgment Heirs named and represented and not on Lloyd Turner or any other successors to the

Judgment Heirs.  I have given the stipulation no effect in reaching the factual determination that the Other Heirs, as well as the Judgment Heirs, are the descendants of Ned and Nannie Turner. At the hearing, I inquired if Mr. Spillers would be presenting evidence regarding assignments from their clients of the mineral interests to them.  Mr. Spillers advised that they had been compensated for prior litigation in other areas and that Theus, *et al.* lawyers claimed no interest in the proceeds from production and would present no evidence to establish an interest.

Finally, it is undisputed that Anna Dedmon is deceased, and there was some question as to whether Pearlye Dedmon, who is also deceased, was her child.  However, the evidence established without controversy that Pearlye Dedmon was Anna Dedmon's husband's child by a prior marriage, although Anna Dedmon raised her as her own.  Therefore, the suspended interest of Pearlye Dedmon (actually that of Anna Dedmon) is to be distributed among the other Judgment Heirs and Other Heirs.

Based upon recommended legal decisions to be held by this Court and the facts found at the hearing before me, there are two changes to the distribution of revenue from production that have previously been distributed by Exco prior to filing this interpleader.  The first is that the interest of "Pearlye Dedmon" previously in suspense is to be distributed to the Judgment Heirs and Other Heirs.  The second is that the interest previously listed for the Theus, *et al.* attorneys would cease as of date of filing of this interpleader and be distributed to their clients (those interests previously had been deducted from their various clients' shares).

In light of my decision and recommendation, I recommend that the accounting claim of Lloyd Turner asserted in reconventional demand be denied as moot.

Because of the complexity of computation and the fact that Exco already had various interests computed on computer spreadsheets, I directed Exco to make those revised

computations.  Exco has done so, I have reviewed them and I have required corrections. Those corrections have been made.  The spreadsheets have previously been made available to counsel for Lloyd Turner to give an opportunity to raise questions regarding the computations as opposed to my factual determination and legal recommendations.  A copy of that spreadsheet, converted to a PDF format, is attached to these recommendations and states my conclusions regarding the ownership of the funds on deposit in the Registry of the Court and the ownership of future production.  Those interests are effective as of February 28, 2013 and do not reflect any changes in interests which may have occurred or may occur in the future and evidence of which is furnished to Exco subsequent to that date.  It is my recommendation that the proceeds of production from The Property be distributed in accordance with the "Total Interest" column of the spreadsheet, being the last column before the "Remarks" column, and that Exco be authorized to continue to pay proceeds of future production based on that total interest subject to receipt of any future transfers, assignments, or successions.  Because of the large number of persons to receive payment from the funds in the Registry of the Court, and the fact that Exco is already prepared to make payments in the normal course of business, I recommend that the Court order the Clerk, upon finality of the Judgment to be rendered, to return the funds to Exco with direction to Exco to promptly distribute the money in accordance with the Judgment.

Respectfully submitted,

George M. Wear, Jr., Special Master

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Special

Master's Report and Recommendation was filed electronically and served by operation of the

Court's CM/ECF system, on this 29th day of May, 2013.

George M. Wear, Jr., Special Master